UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
PHILIP J. DEFEO                                          Chapter  7

                    Debtor                               Case No.  05-24761

----

| | |
|---|---|
| IRENA DEFEO | Adversary Proceeding |
| Plaintiff | No. 06-2003 |
| v. | |
| PHILIP J. DEFEO | |
| Defendant | |

----

**APPEARANCES:**

Gregory F. Arcaro, Esq.
Brown, Paindiris & Scott, LLP, 2252 Main Street, Glastonbury, CT 06033
Counsel for Plaintiff

Martin Chorches, Esq.
Chorches & Novak, P.C., 1331 Silas Deane Highway, Suite 202, Wethersfield, CT 06109
and
Nicholas P. Cardwell, Esq.
Law Offices of Nicholas P. Cardwell, 108 Oak Street, Hartford, CT 06106
Counsel for Defendant - Debtor

----

## MEMORANDUM OF DECISION

**KRECHEVSKY, U.S.B.J.**

### I.

Philip J. DeFeo ("the debtor") is the debtor in a Chapter 7 bankruptcy case

commenced on October 13, 2005.[1] Irena DeFeo ("Irena"), the former wife of the debtor, on January 9, 2006, filed a complaint against the debtor seeking (1) to except from discharge, pursuant to Bankruptcy Code §523(a)(15), the debts due her in accordance with the judgment of marital dissolution entered by the Connecticut Superior Court ("the state court") on August 2, 2005; and (2) to recover attorney's fees she incurred in bringing the present action.[2]

The court held a two-day trial on November 8, 2006 and January 12, 2007, at which it received both testimonial and documentary evidence. The parties subsequently filed memoranda of law in support of their positions.

## II.

## BACKGROUND

Irena had moved to Austria from her native Czechoslovakia in 1984. After two years in Austria, she emigrated to Australia, where she then lived for eleven years and was employed as a computer programmer. She returned to the Czech Republic in 1997. She and the debtor became acquainted over the internet and met in person in 2001 when Irena traveled to the United States to visit a friend in New York. The couple were married in Las Vegas, Nevada on April 4, 2002.

In July, 2002, the debtor and Irena jointly purchased their marital home ("the house") located at 13 Chamberlain Street, Vernon, Connecticut. Irena transferred

---

[1] All references herein to sections of the Bankruptcy Code are references to such sections as they were in effect as of the date of the petition, i.e., prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

[2] Section 523(c)(1) requires a creditor to institute a timely adversary proceeding solely in the bankruptcy court to determine dischargeability of a §523(a)(15) debt.

2

$40,000 from her savings in Australia to a joint account with the debtor as her contribution to the house down payment of $80,000. For about a year after the debtor and Irena purchased the house, Irena's son lived with the couple while attending school on a student visa. He thereafter returned to Australia. Subsequently, Irena's mother visited, living with the couple for about six months.

The debtor, on April 6, 2004, filed a complaint in the Connecticut Superior Court ("the state court") for dissolution of the marriage. On August 2, 2005, following a trial, the state court issued a judgment dissolving the marriage, stating that neither party was entitled to alimony, and providing for a division of property as follows:

- the debtor was responsible for payment of his own attorney's fees and $15,000 towards Irena's attorney's fees;

- the debtor was to have sole ownership of a 1996 Ford Taurus and Irena was to have sole ownership of a 1999 Mazda Protégé ("the Mazda") (then in the name of the debtor);

- Irena was to have sole ownership of a timeshare property in Las Vegas, Nevada;

- the debtor was to retain his interests in his bank account, credit union account, and pension plan;

- the debtor was to retain sole ownership of the funds received in settlement of a 2002 automobile accident;

- the debtor was to pay Irena $5,000 in cash immediately;

- Irena was to retain sole interest in the personal property listed on her financial affidavit, and in any interest she held in real or personal property located outside the United States;

- the debtor was to have sole ownership of the house, with Irena quitclaiming her interest to the debtor who was to pay her $40,000 obtained from refinancing the property, or, if he is unable to refinance the property, from his other assets.

During their three-year marriage, the debtor, a postal worker who is now 63 years old, was the sole breadwinner, with earnings of approximately $58,000 per annum. In addition, the debtor acknowledged receiving significant cash funds, totaling $321,000, from other sources over the four years preceding his petition. In 2002, he received $165,000 as the net proceeds in settlement of a claim arising from an automobile accident. Between December 31, 2003 and September 30, 2004, the debtor made withdrawals from his John Hancock IRA account, reducing the balance thereof by about $64,000. The debtor also took two loans from his TSP account - $20,000 in December 2001; and $20,000 in February 2003. In addition to contributing $40,000 towards the down payment for the house, Irena made two loans to the debtor from her savings - $5,000 in May 2003 and $7,000 in November 2003. As of the petition date, the debtor claims he no longer retained any of the $321,000. The debtor used $80,000 of such funds for the down payment on the house. The debtor posited that the remaining $241,000 had been spent on vacations - including two trips to Florida, two trips to Las Vegas, Nevada and the Southwest, and a cruise - paintings, gambling, and some repairs the debtor had made to the house, but he provided no evidence to support his position.

Irena, who is now 57 years old, was not employed outside the home during her marriage to the debtor. She has no pension fund in the United States, Australia or the Czech Republic. Irena testified that, since the marital dissolution, she has been unable to afford an apartment of her own and has been living with a friend, whom Irena pays

rent of $100 per week.. Irena recently found part-time employment caring for elderly individuals, for which she receives $300-$400 per week. Irena's assets presently consist of stock holdings in Australia estimated to be worth about $30,000 in U.S. dollars; a parcel of real property in the Czech Republic valued at $10,000 in U.S. dollars; and an account in Germany worth $1,200 U.S. dollars.

Except for some items of personal property Irena brought with her when she moved out of the house following the marital dissolution, the parties have not yet made the transfers required under the state-court dissolution judgment. Irena has not yet transferred her interest in the house to the debtor; the debtor has not transferred title to the Las Vegas timeshare to Irena; nor has the debtor made the cash payments called for under the state-court judgment. As of the date of the dissolution, titles to both cars were in the debtor's name, although Irena had possession of the Mazda. While Irena was attending the debtor's §341 meeting of creditors on December 15, 2005, a friend of the debtor secretly removed the Mazda from where Irena had parked it near the courthouse and drove it to a car dealership. On December 19, 2005, the debtor transferred title to the dealer in return for $3,000 cash which was given to the debtor's daughter for her purchase of a car. The dealership subsequently sold the Mazda for $4,950.

Irena seeks to have the obligations imposed on the debtor by the dissolution judgment held nondischargeable under §523(a)(15), as a property settlement, other than in the nature of support, arising from a divorce decree. In addition, she seeks to recover from the debtor her attorney's fees incurred in this proceeding.

III.

DISCUSSION

A. Nondischargeability under §523(a)(15)

Bankruptcy Code § 523[3], "Exceptions to discharge," provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
. . .
(15) not of the kind described in paragraph (5)[4] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;
> . . . .

With regard to the burden of proof under §523(a)(15), this court has previously stated:

The standard of proof under Section 523(a)(15), as with other Section 523(a) dischargeability exceptions, is a preponderance of the evidence. However, the allocation of the burden of proof under Section 523(a)(15) is somewhat unique. A plaintiff/former spouse bears the initial burden of demonstrating (i) that there is a debt owed to [him]; (ii) that such debt was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree; and (iii) that such obligation is not of the kind described in Code Section 523(a)(5).

---

[3] Section 523(a)(15) was amended in 2005 to delete (A) and (B), making property settlements pursuant to a divorce decree nondischargeable regardless of the debtor's ability to pay or the relative burdens imposed.

[4] Section 523(a)(5) excepts from discharge "any debt ... to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with ... a divorce decree."

6

> Upon a successful initial showing by the plaintiff, the burden then shifts to the debtor-defendant to prove either one of the dischargeability safe harbors provided by subparagraph (A) and (B) of Section 523(a)(15).

Woszczyna v. Woszczyna (In re Woszczyna), 295 B.R. 425, 429 (Bankr. D.Conn. 2003) (citations and internal quotation marks omitted).

The dissolution judgment entered by the state court establishes the first two elements the plaintiff must prove. Irena's acknowledgment that the obligations under the dissolution decree are not in the nature of alimony or support[5] is sufficient to establish the third element of her prima facie case. The debtor, therefore, has the burden of proof either that he is either unable to pay the debt or that the benefit to him of receiving a discharge of the debt outweighs the detriment to the plaintiff. In considering the relative benefit and detriment to the parties, in accordance with §523(a)(15)(B), of granting a discharge, the court considers the totality of the circumstances. In re Woszczyna, 295 B.R. at 430.

Under the dissolution judgment, Irena is to transfer her one-half interest in the house to the debtor. The debtor is to transfer to Irena her personal property, the timeshare (valued by the debtor at $3,000), the Mazda (or the replacement value thereof, $4,950), and a total of $60,000 in cash payments. The debtor, in his bankruptcy schedules, valued the house at $180,000, with an outstanding mortgage balance of $85,221.88. The debtor would have available equity of $94,778.12 with which to satisfy the judgment. The court concludes that the debtor has the ability to pay his obligations under the dissolution judgment and does not meet the "safe harbor"

---

[5] An award of alimony, maintenance or support pursuant to a divorce decree is excepted from discharge under §523(a)(5), without regard to the financial criteria set forth in §523(a)(15)(A) or (B).

7

criteria for discharge of the debt under §523(a)(15)(A).

Insofar as the criteria of §523(a)(15)(B) are concerned, the court concludes that the detriment to Irena of discharging the debtor's obligations under the dissolution judgment far outweighs the benefit to the debtor. The debtor's estimated income for 2006 was in excess of $60,000, while Irena's was, at most, about $20,000. The debtor will also have sole ownership of the house, with its equity of $94,778.12, and retains his interest in his pension plans. Irena has less than $50,000 in property located in Australia and the Czech Republic, but has no retirement savings and was not employed under Social Security until age 57. The court further finds in this proceeding the debtor's claim to have spent some $241,000 in cash in the four years preceding his bankruptcy largely unsubstantiated. The court thus concludes that the debtor has failed to satisfy the safe harbor requirements of §523(a)(15)(B).

### B. Attorney's Fees

Irena seeks, in the second count of her complaint, to recover the attorney's fees incurred in pursuing the present adversary proceeding on the grounds that "the totality of the circumstances surrounding the Defendant's actions related to his obligations to the Plaintiff, both prior to and since the filing of his bankruptcy petition, including without limitation, his attempt to discharge his obligations under the Divorce Judgment, evidence the Defendant's bad faith and constitute harassment of the Plaintiff." (Complaint ¶14.) In her memorandum of law, Irena argues that the debtor's taking possession of and selling the Mazda contrary to the state-court judgment, and his initial denials concerning such actions constitute bad faith and harassment for which this court should impose sanctions pursuant to its inherent powers.

The Bankruptcy Code contains no provision for fee shifting in a nondischargeability proceeding under §523(a)(15). The plaintiff relies on the court's inherent powers to sustain such an award. The Supreme Court recognized that "in narrowly defined circumstances federal courts have inherent power to assess attorney's fees ... even though the so-called 'American Rule' prohibits fee shifting in most cases." Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (citations and internal quotation marks omitted).

> [A] court may assess attorneys' fees for the willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. These exceptions [to the American rule that each party bear the cost of his or her own attorney's fees] are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations.

Alyeska Pipeline Svc. Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (citations and internal quotation marks omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion.... to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. at 44-45.

The court, in its discretion, declines to exercise its inherent powers to impose the sanctions sought in the present proceeding. Such powers are narrowly construed and ordinarily reserved for circumstances where the judicial process itself has been abused. Irena asserts that the debtor filed his bankruptcy petition for an improper purpose; that he sought to circumvent his obligations under the dissolution judgement, rather than to make a financial fresh start. The schedules filed with the debtor's petition and his subsequent amendments thereto, however, indicate that he had unsecured debt of $62,327.32 in addition to his obligations to Irena. Although the debtor's sale of the

9

Mazda was contrary to a court order, such order was issued by the state court in the dissolution proceedings and the appropriate remedy, if any, should, therefore, be sought in such court. Irena further alleges that the debtor has failed to adequately explain a loss of assets. Such an allegation relates not to the court's inherent power to manage the proceedings before it, but to substantive provisions of the Bankruptcy Code outside the scope of the present adversary proceeding.

## IV.

## CONCLUSION

In accordance with the forgoing discussion, the court concludes that the debtor's obligations under the state-court marital dissolution judgment are excepted from discharge pursuant to §523(a)(15). The court declines to award attorney's fees to the plaintiff. Judgment shall so enter.

Dated at Hartford, Connecticut this 23 day of May, 2007.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE

10